Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The employee-employer relationship existed at the time of the alleged accident.
3. Spring Industries Inc. is defendant.
4. Spring Industries is a duly qualified self-insurer.
5. The parties were subject to the North Carolina Workers Compensation Act at the time of the alleged incident, employing the requisite number of employees to be bound under the provision of the act.
6. Plaintiffs average weekly wage can be determined from the completed Industrial Commission Form 22 wage chart.
7. Plaintiff was employed by defendant from 19 February 1974 to 24 July 1978 and from 8 September 1978 to 1 October 1997. From 19 October 1981 to the end of her employment, plaintiff worked as a weaver in the weave room.
8. Plaintiffs last day worked for defendant was 29 September 1997.
9. Pulmonary test documents were marked as defendants exhibit 1 and received into evidence.
10. A respiratory questionnaire was marked as defendants exhibit 2 and received into evidence.
11. Billing documents were marked as defendants exhibit 3 and received into evidence.
12. A Form 22 was marked as defendants exhibit 4 and received into evidence.
13. Attendance records were marked as defendants exhibit 5 and received into evidence.
14. Earnings records were marked as defendants exhibit 6 and received into evidence.
15. An exit interview record was marked as defendants exhibit 7 and received into evidence.
16. A cotton dust survey summary was marked as defendants exhibit 8 and received into evidence.
17. A summary of cotton dust level studies was marked as defendants exhibit 9 and received into evidence.
18. Plaintiff received $100.00 per week for 26 weeks from a short-term disability program fully funded by defendant.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 44 year old female who had completed the 10th grade and obtained a GED. At the time of the hearing before the Deputy Commissioner, she was employed as a part-time hospice nurse assistant. Plaintiff had been employed as a weaver by defendant for approximately 16 years.
2. Plaintiff had a history of smoking one and one half packs of cigarettes a day from 1979 to 1991.
3. Plaintiff operated a machine that wove two types of cotton cloth together. Plaintiff was exposed to cotton dust particles in the weaving room as the two cottons wove together. Plaintiff was also exposed to cotton dust when compressed air was used to blow the dust off the machines in her work area. At times during the blowing off process, the dust became so heavy it appeared as though there was a blizzard in the workplace.
4. Plaintiff was required to wear a mask when working within 25 feet of the use of compressed air, and she testified that she did wear a mask during the blowing off process and when the floors were swept.
5. In 1996, plaintiff began to experience hoarseness and shortness of breath. This difficulty became worse on her first day in the workplace after the weekend, persisting throughout the week, and improving during the two or three day interval away from the weaving room workplace.
6. From 1980 to 1995, cotton dust levels inside the plant were consistently below the OSHA permissible exposure levels. Defendant admitted that these tests were not performed when cotton dust was being blown off the machines; however, this is a common practice for dust monitoring in the textile industry, and is consistent with OSHA recommendations.
7. Plaintiff underwent pulmonary function tests on a yearly basis from 1984 to 1997. A pre-exposure test was done in the morning prior to plaintiff going to work, and the post exposure test was done after approximately half a work day. These tests did not show any significant decline in her lung function from the time she was tested before she was exposed to cotton dust to the time she was exposed to such dust after working half a day in the weaving room.
8. On 19 August 1997, plaintiff presented to Dr. Ferrell Collins, a pulmonary specialist. Dr. Collins testified that during his course of treatment of plaintiff he determined that her lung function is "pretty close to normal. He also noted that if an exposure to cotton dust was causing problems, it would most likely occur in the first year or two following the onset of exposure and not, as in plaintiffs case, suddenly cause problems after 21 years.
9. Initially, Dr. Collins related plaintiffs shortness of breath at least in part to her exposure to cotton dust in the work environment; however, his opinion was based solely upon plaintiffs explanation of her work conditions. When he was presented with the records of plaintiffs annual pulmonary function tests and plaintiffs history of smoking, he changed his opinion. Dr. Collins stated that the changes in plaintiffs vital capacity were to be expected due to aging and smoking and not consistent with a pulmonary condition associated with working in a cotton mill environment.
10. On 26 March 1998, plaintiff presented to pulmonary medicine expert Dr. Herbert A. Saltzman at Duke University Medical Center. Following his examination and testing, Dr. Saltzman wrote to plaintiff and stated that "the findings are benign, including oxygen levels in arterial blood, pulmonary function tests, the electrocardiogram and blood tests. Accordingly, I find no evidence of a chronic pulmonary function abnormality, relevant to prior exposures including tobacco smoke and the cotton textile mill. Dr. Saltzman concluded by assessing plaintiff with a 10% AMA respiratory impairment, and a 0% whole body impairment.
11. There is no evidence that plaintiff sustained a chronic pulmonary function abnormality, relevant to prior exposures including tobacco smoke and the cotton textile mill. There is an absence of any significant airway obstruction in plaintiffs lungs and no functional impairment from any airway obstruction.
12. There is insufficient expert medical evidence of record to support a finding that plaintiffs workplace exposure to cotton dust was a significant contributing factor to the development of plaintiffs hoarseness and shortness of breath.
13. Plaintiff has not established that she has contracted an occupational disease due to causes and conditions which are characteristic of and peculiar to her employment, excluding all ordinary diseases of life to which the general public is equally exposed outside of her employment.
14. However, as a result of plaintiffs problems with hoarseness and shortness of breath, she needs to work in a dust free environment. Plaintiff has no chronic permanent problem as a result of having worked in a cotton mill for defendant. Plaintiffs only limitation is that she should work in an environment that does not contain noxious inhalants. Plaintiff is physically capable of working a full time schedule.
15. Since June 1995, plaintiff has worked part-time as a nursing assistant.
16. Plaintiff has not conducted a reasonable but unsuccessful job search since being removed from the cotton mill by Dr. Collins. Given that the plaintiff had been able to maintain part-time employment, it would not have been futile for the plaintiff to conduct a job search.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not contracted an occupational disease due to causes and conditions which are characteristic of and peculiar to her employment, excluding all ordinary diseases of life to which the general public is equally exposed outside of her employment. N.C. Gen. Stat. 97-53(13).
2. Plaintiffs hoarseness and shortness of breath is the result of a personal sensitivity peculiar to her and not the result of her employment with defendant-employer. Plaintiff is not entitled to compensation for her own personal sensitivity to dusty environments. Sebastian v. MonaWatkins Hair Styling, 140 N.C. App. 30, 370 S.E.2d 872, cert. denied,297 N.C. 301, 254 S.E.2d 921 (1979). Plaintiff has failed to show by the greater weight of the evidence that her workplace exposure to cotton dust was a significant contributing factor in the development of her shortness of breath and hoarseness. N.C. Gen. Stat. 97-53(13).
3. Plaintiff has failed to show that she has sustained any disability as a result of her inability to continue to work in a cotton mill. No physician has restricted her from working. Because this claim was denied, plaintiff had the burden to show that she has sustained an incapacity to earn wages comparable to the average weekly wage she was earning at the time she stopped working for defendant. Russell v. Lowes Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim for compensation for her hoarseness and shortness of breath is HEREBY DENIED.
2. Defendants shall pay expert witness fees in the amount of $300.00 to Dr. Saltzman and $300.00 to Dr. Collins.
3. Each side shall pay its own costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER